| | | |
|---|---|---|
| **DEANGELO CRAWFORD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV1725CEJ/MLM** |
| | ) | |
| **TROY STEELE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed
by Petitioner Deangelo Crawford ("Petitioner"). Doc. 1. Respondent filed a Response to Order to
Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7.[1] This matter was
referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc.
10.

**I.**
**BACKGROUND**

Petitioner was charged by Complaint as follows: Count I, murder in the first degree, in that
on or about February 6, 2002, in the City of St. Louis, Missouri, Petitioner, after deliberation,
knowingly caused the death of Willie James Ball by shooting him; Count II, robbery in the first degree
in that on or about February 6, 2002, in the City of St. Louis, Missouri, Petitioner forcibly stole
currency in the possession of Willie James Ball, and in the course thereof displayed what appeared
to be a deadly weapon; and Count III, armed criminal action in that Petitioner committed the felony

---

[1]     The Response to the Order to Show Cause was filed on February 5, 2007. On
February 25, 2007, the court gave Petitioner thirty days to file a traverse. Petitioner has failed to
file a traverse.

of robbery in the first degree charged in Count II with and through the use, assistance and aid of a

deadly weapon. Resp. Ex. B at 6-7.

The testimony at Petitioner's trial as described by the State motion court was as follows:[2]

> Deangelo Crawford, Antoine Slaughter and Maurice Hawkins decided to escort Slaughter's sister, Antoinette Thompson home on February 6, 2002.[3] Slaughter testified that Crawford was limping as if he had a gun in his pants leg. Crawford told Slaughter that he was "about to get that" in reference to robbing someone. Thompson testified that Crawford and Hawkins crossed the street towards Hurn's Lounge. Slaughter continued to accompany Thompson to her house located near the lounge. From the front of her house, Thompson saw Crawford and Hawkins at a car with an old man inside. Thompson then observed a gun in Crawford's hand and heard two shots. According to Hawkins, Crawford shot the victim. Detective Harrington testified that Crawford admitted to involvement in the shooting in a video statement.

Resp. Ex. F at 29.

Further, as stated by the Missouri appellate court:

> In addition to eyewitnesses' testimony, the jury was presented with a video containing [Petitioner's] own admission of guilt. In this video, [Petitioner] stated that

---

[2]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 541 U.S. 996 (2004). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

[3]    The court has omitted reference to transcript pages in the motion court's decision.

after he and Accomplice approached Victim's car to rob him, [Petitioner] pulled out a rifle. According to [Petitioner's] taped statement, Victim grabbed the rifle barrel and attempted to pull a pistol out of Victim's pocket. [Petitioner] said the rifle went off, and Accomplice then took money from Victim. When confronted with the fact Victim was shot twice, [Petitioner] said the gun went off a second time.

Resp. Ex. I at 5.

As stated by the motion court, the defense position was that Petitioner was guilty of second degree murder rather than murder in the first degree because there was no "cold deliberation." Resp. Ex. F at 29-30. The jury found Petitioner guilty on all counts as charged and the court sentenced Petitioner to concurrent sentences of life without parole for murder in the first degree and life for robbery first degree and to a consecutive life sentence for armed criminal action. Resp. Ex. B at 55-57.

Petitioner filed a direct appeal with the Missouri appellate court. Resp. Ex. C. By Order dated July 27, 2004, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. E. Petitioner filed a pro se post-conviction relief motion. Resp. Ex. F at 3-8. Counsel was appointed and filed an amended motion. Resp. Ex. F at 12-27. The motion court denied Petitioner's motion without an evidentiary hearing and on September 5, 2006, the Missouri appellate court denied Petitioner's appeal and affirmed the judgment against him. Resp. Ex. F at 28-34; Resp. Ex. I.

On November 30, 2006, Petitioner filed a § 2254 Petition, in which he raises the following issues:

**(1)**    The trial court erred in informing Petitioner of the wrong penalty for felony murder in an unsuccessful guilty plea attempt;

**(2)**    The trial court erred in striking venireperson McCoy for cause;

**(3)**    The trial court erred in sustaining the State's objection to Petitioner's closing argument that he was less culpable because of his age;

**(4)**    Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and present the defense of accident;

3

**(5)**     Petitioner received ineffective assistance of counsel because trial counsel failed to call Petitioner as a witness;

**(6)**     Petitioner's convictions for first-degree robbery and armed criminal action violate the double jeopardy clause;

**(7)**     The trial court erred in not giving MAI-CR 3d 312.06 after the jury returned its verdict.

Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S.

386, 388-89 (2004).  <u>See</u> <u>also</u> <u>Coleman</u>, 501 U.S. at 750  (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994).  The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." <u>Dretke</u>, 541 U.S. at 393 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>Schlup v. Delo</u>, 513 U.S. 298 (1995)).  "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" <u>McCoy v. Lockhart</u>, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default.  <u>McKinnon v. Lockhart,</u> 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." <u>Id.</u> at 833(citing <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)).  However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." <u>Id.</u> (citing <u>Leggins v. Lockhart</u>, 822 F.2d 764, 766 (8th Cir.1987)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court.  <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the

federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner did not raise the issues of Grounds 6 and 7 before the Missouri appellate court. As such, as stated by Respondent, Petitioner has procedurally defaulted these grounds for relief. See Sweet, 125 F.3d at 1149. Petitioner has not suggested grounds to excuse his procedural default of these grounds. The court finds, therefore, that Grounds 6 and 7 should be dismissed as procedurally defaulted.

Petitioner alleged before the Missouri appellate court that he received ineffective assistance of counsel because counsel failed to call him as a witness, which issue he also raises in Ground 5 before this court. In support of this basis for relief Petitioner argued before the Missouri appellate court that counsel's failure to call him as a witness precluded his presenting the defense of accident. Petitioner, however, did not separately allege as a basis for relief before the Missouri appellate court that he received ineffective assistance of counsel because counsel failed to investigate and present the defense of accident, the issue of Ground 4. In Strickland v. Washington, 466 U.S. 668, 690 (1984), the United States Supreme Court held that "[a] convicted defendant making a claim of ineffective assistance must *identify the acts or omissions* of counsel that are alleged not to have been the result of reasonable professional judgment." (emphasis added). The Eighth Circuit held in Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994), that "a habeas petitioner must have raised both the factual and legal basis for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review." See also Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004), cert. denied, 125

S.Ct. 902 (2005). "A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review." Flieger, 16 F.3d at 885 (citations omitted). As Petitioner failed to specifically allege before the Missouri appellate court that counsel was ineffective for the reasons articulated in Ground 4, he has procedurally defaulted this ground. See Strickland, 466 U.S. at 690; Flieger, 16 F.3d at 885. In the interests of justice, the court, however, will consider the issue of Ground 4 on its merits.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 783 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 262, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or

involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent."  529 U.S. at 406.  See also  Price v. Vincent, 538 U.S. 634, 640 (2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case."  Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."  Id. at 793 (citing Williams, 529 U.S. at 410-11).  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

[W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was

not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## IV.
## STANDARD APPLICABLE TO INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in <u>Strickland</u> that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002) (citing <u>Stickland</u>, 466 U.S. at 694). The Court held in <u>Mickens</u> that:

We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case- by-case inquiry is unnecessary. <u>See</u> <u>Cronic</u>, supra, at 658-659, 104 S.Ct. 2039; <u>see also</u> <u>Geders v. United States</u>, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether

counsel's inadequate performance undermined the reliability of the verdict. <u>Cronic</u>, supra, at 659, n. 26, 104 S.Ct. 2039.


<u>Id.</u>


**V.**

**DISCUSSION**

**Ground 1- The trial court erred in informing Petitioner of the wrong penalty for felony murder in an unsuccessful guilty plea attempt:**

In regard to the issue of Ground 1, the Missouri appellate court held as follows:[4]

A City of St. Louis grand jury indicted Crawford on charges of first degree murder, first degree robbery and armed criminal action. Prior to trial, the State offered Crawford thirty year sentences for second degree felony murder, first degree robbery and armed criminal action, to be served concurrently. Crawford initially rejected the offer and trial began on May 19, 2003. Following the State's voir dire, Crawford changed his decision and authorized his attorney to enter a guilty plea to the State's offer of second degree felony murder.

The trial court commenced a hearing to take Crawford's guilty plea to second degree felony murder, robbery and armed criminal action. Initially, the trial court established that Crawford understood he was pleading guilty to second degree murder

---

[4]     The Missouri appellate court reviewed the issue of Ground 1 pursuant to plain error. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in <u>Hornbuckle v. Groose</u> that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting <u>Mack v. Caspari</u>, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In <u>Hornbuckle</u>, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. Recently, in <u>Thomas v. Bowersox</u>, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in <u>Evans v. Luebbers</u>, 371 F.3d  438, 443 (8th Cir. 2004), <u>petition for cert. filed</u>, Oct. 28, 2004 (No. 04-1706), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Ground 1 is procedurally barred. <u>See</u> <u>also</u>, <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999).

but that his original charge was first degree murder. Thereafter, the trial court asked the State's attorney to describe the range of punishment. The attorney stated, in pertinent part: "Murder second, felony, is a Class A felony with a range of punishment from ten years to 30 years or life in prison." The State's attorney also confirmed that "in reliance upon his plea of guilty the State amends count I from murder first to murder second, felony, and would recommend a sentence of 30 years." In an attempt to ensure that Crawford understood the range of punishment, the trial court inquired:

> Well, yeah, all the sentences will run together. But what I want to be sure of is that you understand the range of punishment. You could get up to life in prison on Count[s] I, II, and III. You understand that? You understand what the total punishment is? Do you understand that?

In response, Crawford answered affirmatively.

Toward the end of the plea colloquy, the trial court asked Crawford questions directed at the voluntariness of his plea. Crawford indicated he felt intimidated and pressured by his family to plead guilty. Crawford asked for time to consider his decision and the trial court agreed to postpone the plea until the next morning. The next morning Crawford informed the trial court that he preferred to go to trial.

> ...

Crawford argues that the trial court violated his state and federal constitutional rights when it informed him of the minimum and maximum penalty for second degree felony murder, the charge to which the plea was offered, rather than first degree murder, his original charge. Crawford claims that the trial court's "misinformation" caused him to "unknowingly reject a favorable plea bargain."

Contrary to Crawford's contention, his failed plea agreement does not implicate either the federal or state constitution. As the Southern District has recently held:

> A failed plea negotiation is a non sequitur. Unless and until a plea agreement is reached and embodied in the judgment of a court, nothing has occurred that is of constitutional significance. (citation omitted). Failed negotiations do not implicate the constitution. It is an ensuing plea of guilty that implicates the constitution.

Rowland v. State, 129 S.W.3d 507, 510 (Mo. App. S.D. 2004). Because Crawford never pled guilty, he cannot claim that the trial court's actions with respect to the failed guilty plea deprived him of his state or federal right to due process.

Even were we to review the trial court's actions during the plea colloquy, we would find no error. The trial court's role in plea agreements is circumscribed by

Missouri Supreme Court Rule 24.02. The relevant section of Rule 24.02 provides that the trial court "must address the defendant personally in open court, and inform him of, and determine that he understands ... [t]he nature of *the charge to which the plea is offered*, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law ..." (emphasis added).

Crawford does not dispute that the trial court informed him of the nature and penalties of the charge to which the plea was offered. Rather he complains that the trial court failed to provide him with information not required by Rule 24.02. Because we find the trial court complied with Rule 24.02, there is no basis for Crawford's assertion of error.

Resp. Ex. E at 2-3.

Pursuant to <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 1. In <u>Mabry v. Johnson</u>, 467 U.S. 504, 507-508 (1984), the Court explained that:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

In regard to the issue of Petitioner's Ground 1, consistent with <u>Mabry</u>, the Missouri appellate court considered that Petitioner did not enter a guilty plea and that, therefore, no constitutional rights attached and that because the alleged error was not incorporated into a judgment Petitioner could not claim that he was deprived of constitutional rights.

Further, the Missouri appellate court considered that the trial court complied with Missouri Rule 24.02. Likewise, Rule 11 of the Federal Rules of Criminal Procedure sets forth the matters of which a court must inquire of a defendant who enters a plea of guilty to ensure that the defendant understands the consequences of his pleading guilty. Included is the nature of the charge "to which the defendant is pleading" and "any maximum possible penalty." Rule 11(b)(1)(G)-(H). Pursuant

to plea negotiations Petitioner was going to plead guilty to second degree felony murder. The trial court informed Petitioner as required by both State and federal law of the maximum penalty for the crime of second degree felony murder. Petitioner now contends that the court should have informed him of the maximum penalty for a crime other than that to which he was going to plead guilty. Neither Rule 24.04 or Fed. R. Crim. P. 11 require that the court do so. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Mabry, 467 U.S. at 507-508. Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2 - The trial court erred in striking venireperson McCoy for cause:**

Petitioner contends that the trial court erred in striking venireperson McCoy for cause, thus depriving him of a full panel of qualified jurors for the purposes of peremptory strikes. Upon addressing the issue of Ground 2, the Missouri appellate court held:

> During the State's voir dire, venireperson McCoy, a teacher at a St. Louis middle school, volunteered that possibly he recognized Crawford as a former student. Responding to follow-up questions posed by Crawford's counsel, venireperson McCoy indicated he was not biased and could be fair and impartial.
>
> The State moved to strike venireperson McCoy on the grounds that the juror recognized Crawford from middle school. Crawford's attorney objected, stating that the juror indicated that he could be fair and impartial. Initially, the trial court declined to rule, preferring to consider several other jurors and give some additional thought to venireperson McCoy's situation. Upon further consideration, however, the trial court granted the motion to strike, stating: "I think that it's too risky with people who are acquainted with the central characters, even at some distance."
>
> The trial court did not err in striking venireperson McCoy. As an initial matter, "[t]he trial court has broad discretion in determining the qualifications of prospective jurors because it is in the best position to evaluate venirepersons' responses." State v. Williams, 46 S.W.3d 35, 41 (Mo. App. E.D. 2001). We will not

disturb the trial court's ruling unless it is clearly against the evidence and constitutes an abuse of discretion. Id.

Here, the trial court considered the venireperson's response as a whole and concluded the relationship posed risks. Even where a venireperson has indicated a lack of bias, a trial court's decision to grant a motion to strike for cause may be upheld. See State v. Van Sickel, 675 S.W.2d 907, 910 (Mo. App. W.D. 1984) (trial court's strikes of nine venirepersons acquainted with defendant, his attorney or parents upheld even where each stated he or she could consider issues without bias).

Critical in assessing the validity of a trial court's decision in such a context, is the existence of a full panel of qualified venirepersons from which to make peremptory challenges. There is no dispute that following venireperson McCoy's removal from the panel, a full panel of qualified jurors remained. As we have previously held, "[s]ubmission of such a panel satisfied the requirements of due process." Blunk, 860 S.W.2d at 821. Because Crawford has not demonstrated that the trial court's ruling deprived him of a full panel of qualified jurors, we find no error in the trial court's grant of the State's motion to strike venireperson McCoy for cause.

Resp. Ex. E at 5-7.

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 2. In Ross v. Oklahoma, 487 U.S. 81, 88 (1988), the Supreme Court held that it has "long recognized that peremptory challenges are not of a constitutional dimension" but rather a "means to achieve an impartial jury." The Court continued to hold that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id. (citations omitted).

Additionally, the Eighth Circuit holds that "the question of juror impartiality [is] one of 'historical fact' in which the presumption of correctness due a state court's factual findings under 28 U.S.C. §2254(d) applie[s]." Wood v. Lockhart, 809 F.2d 457, 461 (8th Cir. 1987) (quoting Patton v. Yount, 467 U.S. 1025, 1036 (1984)). Thus, the only question on review is "whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." Id. (citing Patton, 467 U.S. at 1038). Upon habeas review challenging a trial court's decision to strike

or not to strike a venireperson for cause a federal court is "limited to examining the responses of the impaneled juror for evidence of prejudice of constitutional magnitude." Id.

In the matter under consideration, the Missouri appellate court noted that the trial court considered both the factual basis upon which the prosecution asked the court to strike venireperson McCoy for cause and McCoy's statement that he could be fair and impartial. The Missouri appellate court further considered the discretion afforded the trial court in evaluating the qualifications of jurors. Significantly, the Missouri appellate court considered that Petitioner did not allege that he was denied a full panel of qualified jurors. As such, the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and is a reasonable application of federal law. See Ross, 487 U.S. at 88; Wood, 809 F.2d at 461. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 3 - The trial court erred in sustaining the State's objection to Petitioner's closing argument that he was less culpable because of his age**:

Upon addressing the issue of Petitioner's Ground 3 the Missouri appellate court held as follows:

> Crawford contends that the trial court erred when it sustained the State's objection to the following statement his attorney made in closing argument:
>
> And, again, we're all culpable. We're all responsible. We all have to take responsibility for our own behavior. But certainly teenagers do not have the same reaction.
>
> The basis for the State's objection was that there was no evidence adduced at trial to support this argument.
>
> Crawford did not put on any evidence at trial. Crawford's lawyer admitted Crawford's guilt in closing argument, but contended that Crawford's acts did not constitute first degree murder. In essence, Crawford's attorney argued that the State did not establish deliberation or cool reflection. Crawford's attorney also argued

19

without objection, that Crawford was only seventeen and the jury should not "throw his life away."

        The trial court did not err in sustaining the State's objection to the argument that teenagers do not have the same reactions as adults. Without citation, Crawford argues that a commentary on a teenage thought process and its relationship to culpability in the absence of trial evidence justifying such an argument is permissible. The Missouri Supreme Court, however, has considered similar arguments and concluded that a trial court may prohibit argument that a defendant is less culpable because of his age or immaturity where there is no credible evidentiary basis for such an argument. State v. Richardson, 923 S.W.2d 301, 314-15 (Mo. banc 1996). Here, Crawford presented no evidence to support his argument and it was therefore not error to preclude it.

Resp. Ex. E at 7-8.

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to Petitioner's Ground 3. Under federal law "[t]he trial court has broad discretion in controlling the direction of [] closing arguments," and an appellate court will not reverse the trial court's determinations in this regard "absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992) (citing United States v. Segal, 649 F.2d 599, 604 (8th Cir.1981)). A trial court may limit a defendant's closing argument to "facts in evidence and reasonable inferences flowing therefrom." Richardson v. Bowersox, 188 F.3d 973, 979-80 (8th Cir. 1999) (quoting United States v. Ojala, 544 F.2d 940, 946 (8th Cir. 1976)). Additionally, the trial court "may prohibit arguments that 'misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury.'" Id. at 980 (quoting United States v. Sawyer, 443 F.2d 712, 713-14 (D.C. Cir. 1971)).

As stated by the Missouri appellate court, Petitioner presented no evidence at trial and his counsel took the position that Petitioner's conduct did not constitute first degree murder. Petitioner did not present evidence to support an argument that he should be held less culpable for his conduct because of his age. Because there was no evidence to support the objectionable portion of Petitioner's

closing argument, the trial court sustained the prosecution's objection. As such, the court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable application of federal law. See Richardson, 188 F.3d at 979-80; Johnson, 968 F.2d at 769-70. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 3 is without merit and that relief on its basis should be denied.

**Ground 4 - Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and present the defense of accident because he did not call Petitioner as a witness:**

**Ground 5 - Petitioner received ineffective assistance of counsel because trial counsel failed to call Petitioner as a witness:**

Petitioner argues in support of Ground 4 that counsel told him not to testify because Petitioner had confessed on tape to having shot the victim; he argues that his only defense to the murder charge was accident and that counsel could not present Petitioner's only defense without calling him to testify. In support of Ground 5 Petitioner argues that he was prejudiced by counsel's failure to call him as a witness and that counsel could not present the theory of accident absent Petitioner's testimony.

Upon addressing Petitioner's argument that he received ineffective assistance of counsel because counsel did not call Petitioner as a witness, the Missouri appellate court held as follows:

> ... To obtain relief on a claim of ineffective assistance of counsel, Movant must demonstrate that: 1) Counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and 2) Movant was thereby prejudiced. Taylor v. State, 126 S.W.3d 755, 757 (Mo. banc 2004).

> ...

> ... Movant claims the motion court clearly erred in denying his motion without an evidentiary hearing because Movant alleged facts, not refuted by the record, that would warrant relief if true, in that Counsel failed to call Movant as a witness. Movant argues that this failure constituted ineffective assistance and prejudiced Movant because he was unable to present his theory that the murder was an accident.

He further claims that he was prejudiced by being advised not to testify because Counsel conceded Movant's guilt without any mitigating evidence to explain Movant's position.

...

In his brief, Movant alleges Counsel, not Movant, made the decision that Movant would not testify. Movant says Counsel told him he could not testify because the State would use his prior admissions of guilt against Movant.

Although an accused's right to testify is a fundamental constitutional right, it may be voluntary and knowingly waived by him. Lott, 147, S.W.3d at 845. An evidentiary hearing on this issue is unnecessary if the record conclusively shows that a movant voluntarily and knowingly waived his right to testify. Kuhlenberg v. State, 54 S.W.3d 705, 708 (Mo. App. E.D. 2001). Advice given to a defendant not to testify will be considered sound trial strategy as opposed to ineffective assistance of counsel. Lott, 147 S.W.3d at 845. Barring exceptional circumstances, such advice is not ground for post-conviction relief. Slater v. State, 147 S.W.3d 97, 101 (Mo. App. W.D. 2004).

In its conclusions of law, the motion court held that Movant's claim that he was deprived of his right to testify at trial was directly refuted by the record, noting that, even if Counsel had failed to inform Movant of his right to testify, Movant twice was informed of this right by the trial court. We agree.

During the guilty plea colloquy prior to the introduction of evidence, the trial court extensively questioned Movant concerning Counsel's services and the rights he would be waiving should he enter a plea. During this questioning, the trial court specifically asked Movant: "You understand that you would have the right to testify or not to testify at the trial as you alone chose?" Movant replied, "Yes." Then following the presentation of Movant's case, the trial court again advised Movant of his right to testify:

> THE COURT: [Y]ou have the right to testify or not to testify as you alone choose. That's your decision. Okay? And I don't want to get in between you and your lawyer, but unless I hear something to the contrary from you, I'm going to assume that you and your lawyer agree. Okay? Do you follow me?
>
> [Movant]: Yes, sir.

Not only does the record conclusively show that Movant voluntarily and knowingly waived his right to testify, but it also demonstrates that Counsel's advice that Movant not testify conformed to the degree of skill, care and diligence of a reasonably competent attorney and failed to prejudice Movant.

Eyewitnesses to the robbery testified that they heard Movant say he was going to rob the victim (Victim), saw Movant and an accomplice (Accomplice) standing next to Victim's car, saw Movant point a gun at Victim sitting in the car, and heard Victim tell Movant that he did not have money and that he had children. They further testified they heard two gunshots, with a delay between the two shots. Accomplice also testified that Movant approached Victim to rob him, pulled a gun on Victim while Victim was sitting in his car, took a couple of dollars from Victim's pockets, and shot Victim twice. Accomplice stated that he never saw Victim and Movant struggling.

Resp. Ex. I at 3-5.

The Missouri appellate court then considered Petitioner's video confession in which he made admissions of guilt and concluded that, "[t]he overwhelming amount of evidence clearly implicates Movant in the robbery and shooting. The record reveals Counsel's trial strategy, in light of this, was to convince the jury that Movant was guilty only of second-degree murder." Resp. Ex. I at 5.

The court continued to consider that in closing argument Petitioner's counsel argued that Petitioner knew he was going to the penitentiary; that counsel asked the jury to find that Petitioner's crime was "murder two," and not murder in the first degree, which is life without parole; and that in reaching this conclusion the jury should consider that Petitioner did not act with the "cool reflection" required to find murder in the first degree. Resp. Ex. I at 5-6. The Missouri appellate court concluded that, "[u]nder the circumstances, Counsel's decision to pursue a conviction for second degree murder was not unreasonable trial strategy"; that "[r]easonable trial strategy cannot be ineffective assistance of counsel"; and that, therefore, Petitioner did not receive ineffective assistance of counsel. Resp. Ex. I at 6.

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to the issues of Petitioner's Grounds 4 and 5. The court has set forth above the two-pronged test set forth in Strickland for determining whether a defendant has received ineffective assistance of counsel. Further, the Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v.

Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). In order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to ... call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses ... may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994). A decision not to call a particular witness is "presumed to be one of trial strategy 'unless clearly shown to be otherwise.'" Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006) (quoting Rousan v. State, 48 S.W.3d 576, 582 (Mo. banc 2001)). See also Drake v. Wyrick, 640 F.2d 912 (8th Cir. 1981). A habeas petitioner claiming ineffective assistance of counsel for failure to call the petitioner to testify must show not only what his testimony would have been had he testified but that he was prejudiced by his counsel's actions. Hines v. United States, 282 F.3d 1002, 1005 (8th Cir. 2002).

The Missouri appellate court applied the two-pronged test of Strickland although it did not specifically cite Strickland. First, the Missouri appellate court considered Petitioner's representing to the court that he understood that he had the right to testify and that during trial he represented to the court that it was his decision not to testify. Next, consistent with the first prong of Strickland, the court considered that Petitioner's not testifying was reasonable in view of the trial strategy that Petitioner did not act with the cool reflection required for first degree murder. See Winfield, 460 F.3d at 1033; Hall, 296 F.3d at 694; Hanes, 240 F.3d at 698; Battle, 19 F.3d at 1556 . Also, the Missouri appellate court considered the evidence against Petitioner including the testimony of eyewitnesses and Petitioner's accomplice. Thus, the Missouri appellate court considered pursuant to the second prong of the Strickland test that Petitioner did not establish that had he testified the outcome of his trial would have been different. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 5 is not contrary to

federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. Also, to the extent the Missouri appellate court considered the issue of Petitioner's Ground 4, its decision is not contrary to federal law and is a reasonable application of federal law.

Further, in regard to Petitioner's Ground 5, as stated by the Missouri appellate court, there was overwhelming evidence of Petitioner's guilt and that his shooting the victim was not an accident. The evidence of Petitioner's guilt included Petitioner's own videotaped statement as well as testimony of eyewitnesses. Under such circumstances, the decision of Petitioner's counsel not to present Petitioner's testimony that the shooting was an accident was reasonable. See Winfield, 460 F.3d at 1033; Hall, 296 F.3d at 694; Hanes, 240 F.3d at 698; Battle, 19 F.3d at 1556. Additionally, because of the overwhelming evidence against him Petitioner cannot establish the prejudice requisite to establish ineffective assistance of counsel. See Strickland, 466 U.S. at 697. The court finds, therefore, to the extent that the Missouri appellate court did not consider the issue of Petitioner's Ground 4, that Petitioner's constitutional rights were not violated because counsel did not investigate and present the defense of accident. See Robinson, 278 F.3d at 865. As such, the court finds that Petitioner's Grounds 4 and 5 are without merit and that, therefore, they should be dismissed.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner procedurally defaulted Grounds 4, 6, and 7 and that Petitioner's Grounds 1-3, 5, and, alternatively, Ground 4 are without merit. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner

should not be granted a certificate of appealability in this matter.  See <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this <u>28th</u> day of August, 2007.          UNITED STATES MAGISTRATE JUDGE